OPINION OF THE COURT
 

 Smith, J.
 

 The primary issue in these appeals is whether foster parents have standing to request a fair hearing from the State when the City denies or fails to act on a foster parent’s request for
 
 *570
 
 foster care maintenance payments
 
 [1]
 
 at a particular rate and the children cared for no longer reside with the foster parents at the time the request for a fair hearing is made. We conclude that foster parents have standing to request a fair hearing under these circumstances.
 

 Background
 

 The Federal Adoption Assistance and Child Welfare Act (42 USC §§ 670-679) provides financial assistance to States that provide foster care and transitional independent living programs to certain eligible children (42 USC § 670). Such assistance is extended to "States which have submitted, and had approved by the Secretary, State plans under this part”
 
 (id.).
 
 By definition, such plans must include provisions for
 

 "assuring that the child receives proper care and that services are provided to the parents, child, and foster parents in order to improve the conditions in the parents’ home, facilitate return of the child to his own home or the permanent placement of the child, and address the needs of the child while in foster care, including a discussion of the appropriateness of the services that have been provided to the child under the plan” (42 USC § 675 [1] [B]).
 

 One of the requirements which must be satisfied by State plans in order for the State to qualify for Federal funds is the condition that the plan provide for foster care maintenance payments "with respect to a child” who meets certain criteria (42 USC §§672, 671 [a] [1]). Federal law also provides that foster care maintenance payments may be made "on behalf of a child” who is "in the foster family home of an individual, whether the payments therefor are made to such individual or to a public or nonprofit private child-placement or child-care agency” (42 USC § 672 [b] [1]).
 

 New York State reimburses local social service districts, such as New York City, for expenditures on foster care programs with funds partially derived from Federal sources.
 
 *571
 
 Accordingly, the Social Services Law provides that after the "amount of federal funds, if any, properly received or to be received” for foster care services have been distributed to local districts, the State will pay varying portions of certain costs "after first deducting therefrom any federal funds properly received or to be received on account thereof’ (Social Services Law § 153 [1]).
 

 The New York State Department of Social Services (State DSS) administers the reimbursement program in accordance with "Standards of Payment for Foster Care of Children” promulgated by the Department
 
 (see,
 
 18 NYCRR part 427). These standards provide that, "State reimbursement must be made only on actual payments to certified or approved foster parents providing care for children in foster family boarding homes up to the maximum levels established by the department for normal, special and exceptional foster care services” (18 NYCRR 427.6 [b]).
 

 State DSS has also promulgated regulations pertaining to "eligibility criteria for receipt cf federally reimbursable foster care maintenance payments” (18 NYCRR 426.1;
 
 see generally,
 
 18 NYCRR part 426). Since Federal funds are available for expenditures on some, but not all, of the children in a State’s foster care system, State DSS regulations acknowledge that only certain payments for foster care services fall under the Federal Act
 
 (see,
 
 18 NYCRR 426.3, 426.4).
 

 While local service districts may set the rates paid to foster parents (subject to certain ceilings) for the provision of normal, special and exceptional levels of foster care, reimbursement for expenditures on such services may occur only after approval by State DSS (18 NYCRR 427.6 [c], [d], [e]). State DSS has established specific criteria relating to the eligibility of foster parents for such reimbursement rates and the classification of foster care services as special or exceptional
 
 (id.).
 

 Matter of Claudio v Dowling
 

 In September 1991, the New York City Department of Social Services (City DSS) placed three children adjudged abused or neglected pursuant to article 10 of the Family Court Act with appellant, a licensed foster care provider. Appellant received the standard, "normal” foster care reimbursement rate for these children.
 

 Three weeks after the children were placed in her home and while the children were in her care, appellant requested foster care benefits at the higher rate of reimbursement available for
 
 *572
 
 special needs children. However, it was not until several months into the placement that two of the children were evaluated by a psychiatrist who found that one child was emotionally disturbed and that the other was learning disabled. Appellant received payment at the higher special needs rate for one child for a period of one month. All three children left appellant’s household on October 29, 1992 and reunited with their biological parents.
 

 Since City DSS had not responded to her requests for reimbursement at the special needs rate and because of the special expenditures incurred in caring for these children, appellant continued to seek such reimbursement after the children were returned to their biological parents. Finally, on August 13, 1993, after failing to receive a response from the City, appellant requested a fair hearing from the State to review the adequacy of the foster care maintenance payments.
 

 Vera v Dowling
 

 On May 10, 1988, City DSS placed two children with appellant Vera, a licensed foster care provider. The children, who had been adjudged abused or neglected pursuant to article 10 of the Family Court Act, resided with the appellant for 21/2 years. Shortly after the placement, appellant observed behavioral problems and the children were referred for psychological evaluation. A psychologist determined that both children had serious emotional and behavioral problems. Appellant received the standard rate of reimbursement for the duration of the placement except for a four-month period when she received the special needs rate for one child.
 

 On November 21, 1990, the children were removed from appellant’s home and returned to their biological parents. Thereafter, appellant learned of the higher reimbursement rate for care provided to special needs children and she requested the higher rate for the entire period the children were under her care. Appellant Vera requested a fair hearing to review the adequacy of the City’s payments on February 23, 1993.
 

 City DSS placed five children who had been adjudged abused or neglected under article 10 of the Family Court Act with appellant Velez, a licensed foster care provider. Three of the children suffered from sickle cell anemia and severe asthma. Appellant received the special needs rate from June 15, 1989 to June 15, 1990 for one child because he entered foster care directly from a hospital
 
 (see,
 
 18 NYCRR 427.6 [c] [6]). Appellant received the standard rate of reimbursement for the remaining children.
 

 
 *573
 
 Two of the children left appellant’s care in the spring of 1989. A third child left in May 1991 and the two remaining children were removed from foster care on March 27, 1991. On February 23, 1993, appellant requested a fair hearing from the State to review the adequacy of the City’s payments for the level of care rendered to all five of these children.
 

 Procedural History
 

 Separate fair hearings were conducted for each appellant. In each case, the Commissioner of State DSS determined that since the children no longer resided with the foster parents at the time the fair hearing was requested, the agency was without jurisdiction to determine the adequacy of the reimbursement. Appellant Claudio brought a CPLR article 78 proceeding challenging the Commissioner’s disclaimer of jurisdiction. Supreme Court granted appellant’s petition to the extent of remanding the matter for an administrative hearing on the merits of appellant’s claim. Since the fact that the children no longer resided with appellant could not affect the character of the service provided, as the foster care services had already been rendered, the court held that appellant had standing to seek reimbursement at the higher special needs rate. The court also observed that Federal law entitled foster parents to administrative hearings in these circumstances.
 

 Appellants Vera and Velez challenged the Commissioner’s determination in a class action lawsuit which sought a declaratory judgment under CPLR 3001. Supreme Court granted summary judgment to the respondents and dismissed the action on the ground that appellants lacked standing to seek review of the reimbursement rate once the children in their care had been removed.
 

 On appeal, the Appellate Division, which considered the cases together, reversed in
 
 Claudio
 
 and affirmed in
 
 Vera.
 
 The Court concluded that "former foster parents” lack standing to seek review of foster care reimbursement rates once the children have been removed from their foster homes (222 AD2d 258, 259). The Appellate Division also concluded that Federal law required that foster parents be provided with a fair hearing only if the foster child resides in the foster care household at the time the request for a fair hearing is made. We granted appellants leave to appeal to this Court.
 

 Appellants contend that foster parents have standing to seek a fair hearing on the adequacy of the City’s reimbursement for expenses incurred in providing foster care services, even if the
 
 *574
 
 child no longer resides in the foster care household. Respondents contend that the State lacks standing to review the adequacy of such reimbursements unless the child resides with the foster parent at the time a request for a fair hearing is made.
 

 Analysis
 

 Appellants’ contention that they have standing to request a fair hearing from the State under the circumstances here is supported by both Federal and State law.
 

 The Federal aid program provides that a State must grant "an opportunity for a fair hearing before the State agency to any individual whose claim for benefits available pursuant to [the Federal Adoption Assistance and Child Welfare Act] is denied or is not acted upon with reasonable promptness” (42 USC § 671 [a] [12]). The plain meaning of this statute provides for fair hearings to foster parents who, like appellants, seek review of alleged underpayments of foster care benefits.
 

 The Sixth Circuit Court of Appeals has held that the category of "any individual” in section 671 (a) (12) includes foster parents and that the benefits referred to in that section "include foster care maintenance payments to licensed foster parents”
 
 (Timmy S. v Stumbo,
 
 916 F2d 312, 315). Although
 
 Timmy S.
 
 is instructive on the matter before us, we conduct our own analysis of the applicable statutory and regulatory schemes.
 

 Under the Federal aid program, a State’s case plan, by definition, provides "services” to foster parents (42 USC § 675 [1] [B]). Such a plan must also provide for the payment of foster care maintenance payments with respect to certain children (42 USC § 671 [a] [1]; § 672). Because foster parents are beneficiaries of case plans, appellants fall within the category of "any individual.” As these disputes concern foster care maintenance payments, they arguably concern "benefits available” pursuant to the Federal Act. Moreover, nowhere does the statute limit the time in which such a hearing can be requested,
 
 [2]
 
 and nowhere does the statute exclude foster parents, such as appellants, from the class of "individuals.”
 

 The legislative history of the Act also indicates that Congress intended the mandatory Federal regulations pertaining to fair hearings in the Federal Aid to Families with Dependent Chil
 
 *575
 
 dren program, which encompassed foster care payments under the previous statutory scheme, be applicable to the Act (HR Conf Rep No. 900, 96th Cong, 2d Sess, reprinted in 1980 US Code Cong & Admin News 1561, 1563, 1565). The regulations of the Federal Department of Health and Human Services, the agency charged with enforcement of the Act, further provide that "[a]n opportunity for a hearing shall be granted to any applicant who requests a hearing because his or her claim for financial assistance * * * is denied, or is not acted upon with reasonable promptness, and to any recipient who is aggrieved by any agency action” (45 CFR 205.10 [a] [5]; 1356.20 [a]; 1355.30 [p] [2];
 
 see also,
 
 205.10 [a] [2] [providing that "the State shall assure that the applicant or recipient is afforded all rights as specified in this section”]).
 

 Finally, under Federal law, foster parents in appellants’ circumstances may be considered "recipients” entitled to a fair hearing. Since foster care payments always are made as
 
 reimbursements,
 
 the foster parent may logically be considered the recipient of "payments to cover the cost of* * * food, clothing, shelter, daily supervision, school supplies, a child’s personal incidentals [etc.]” (42 USC § 675 [4] [A]) and thus entitled to a fair , hearing.
 

 The State’s reimbursement program additionally provides support for the conclusion that appellants have standing to seek a fair hearing on the payment issue here, that is, whether the foster parents received the proper rate of reimbursement for the level of care actually rendered to the children.
 

 The State provides an applicant or recipient of "assistance, benefits or services” (18 NYCRR 358-3.1 [b]) with the right to a fair hearing "to challenge certain determinations or actions of a social services agency or such agency’s failure to act with reasonable promptness or within the time periods required” (18 NYCRR 358-3.1 [a]). Upon approval by the State, the City’s payments for special and exceptional foster care services "made on behalf of foster children” are eligible for reimbursement (18 NYCRR 427.6 [c], [d]). State regulations further provide that payments made by social services districts "for special or exceptional foster care services made to foster parents” who meet certain criteria are reimbursable (18 NYCRR 427.6 [e]). Additionally, "certified and approved foster care parents must be reimbursed for each such child to whom they provide foster care according to the standards established in Part 427 [of the Department of Social Services Regulations]” (18 NYCRR 443.3 [v]). Moreover, such reimbursements are limited to "actual
 
 *576
 
 payments to certified or approved foster parents” (18 NYCRR 427.6 [b]). Since the language of 18 NYCRR 443.3 (v) regarding reimbursement of foster parents is mandatory, the proper course under the statute is to reimburse foster parents according to the correct rate of benefits. Affording foster parents a fair hearing to review the correctness of their benefits furthers this important State policy.
 

 It is evident from the foregoing that under the State’s regulatory scheme reimbursements to the City arise out of payments for foster care services rendered on behalf of a child. However, such payments are made to foster parents, and only for those services which have been actually rendered. Thus, foster parents may properly be considered applicants or recipients of assistance, benefits or services provided by a social services agency and, accordingly, are entitled to a fair hearing.
 
 [3]
 
 It is irrational to require a child to be in the foster care boarding home at the moment that a fair hearing is requested.
 

 Since no reimbursements to the foster parent, the City or the State may occur for expenditures on foster care services until such services have been actually provided to the child, any dispute over the proper rate of reimbursement inevitably occurs after such services have already been rendered. The State has recognized that "foster care rates are an important ingredient in enabling social services districts to place children in the least restrictive setting appropriate to the needs of the child and to attract a sufficient number of qualified foster parents to serve as placement resources for such children” (Local Commissioner’s Mem, 92 LCM-162 [Oct. 21, 1992]). To deny appellants standing to request a fair hearing with respect to the proper rate of reimbursement for foster care provided to children is at odds with these statutory and regulatory purposes. Finally, we note that in providing foster parents with the opportunity for a fair hearing, procedural matters relating to the administration of such hearings may be prescribed by statute or appropriate regulation.
 

 Accordingly, the order of the Appellate Division in
 
 Matter of Claudio v Dowling
 
 should be reversed, with costs, and the order of the Supreme Court, New York County, reinstated. In
 
 *577
 

 Vera v Dowling,
 
 the order of the Appellate Division should be reversed, with costs, and the State defendants’ motion for summary judgment denied.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Levine, Ciparick and Wesley concur.
 

 In each case: Order reversed, etc.
 

 [1]
 

 . Under Federal law, foster care maintenance payments are defined as, "payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child’s personal incidentals, liability insurance with respect to a child, and reasonable travel to the child’s home for visitation” (42 USC § 675 [4] [A]). New York State defines "foster care maintenance” as "federally reimbursable payments which, for children in foster care, cover the cost of’ the various items and services designated in the Federal statute (18 NYCRR 426.2 [c]).
 

 [2]
 

 . Nothing in this opinion should be construed to limit the State’s ability to set reasonable time limits for applicants and recipients seeking a fair hearing.
 

 [3]
 

 . Moreover, the State provides fair hearings to sponsors (18 NYCRR 358-3.1 [c]), relatives or friends (18 NYCRR 358-3.1 [d]), and spouses (18 NYCRR 358-3.1 [g]) in certain circumstances even though such persons are not technically applicants or recipients of assistance, benefits or services. Surely, the Legislature could not have intended these individuals, but not appellants, to have standing to seek fair hearings.