THE STATE EX REL. CINCINNATI ENQUIRER, A DIVISION OF GANNETT SATELLITE NETWORK, INC. *v.* JONES–KELLEY, DIR.

[Cite as *State ex rel. Cincinnati Enquirer v. Jones–Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770.]

(No. 2006–2239—Submitted January 8, 2008—Decided April 17, 2008.)

**O'DONNELL, J.**

{¶ 1} This is an original action for a writ of mandamus to compel the director of the Ohio Department of Job and Family Services ("ODJFS") to provide access to an electronic copy of a database of the names and addresses of certified foster caregivers in the state. Because the director failed to meet her burden to establish that the requested record is excepted from disclosure, we grant the writ.

{¶ 2} Relator, the Cincinnati Enquirer, a division of Gannett Satellite Network, Inc. ("Enquirer"), operates and does business as the Cincinnati Enquirer, a newspaper of general circulation in Cincinnati, Ohio. In September 2006, a

reporter for the Enquirer requested that Barbara Riley, who was then the director of ODJFS, provide "an electronic copy of the ODJFS database containing the names and addresses of all foster associations, institutions or homes certified by the state under O.R.C. Chapter 5103." ODJFS provided the Enquirer with a list of private agencies certified to perform foster-care-related functions, but the department did not provide a list of the names and addresses of certified foster homes. As of August 1, 2007, there were 9,985 certified foster homes in Ohio. According to an ODJFS official, during one investigation, the department learned that approximately 80 percent of all foster homes have had a foster child in the past year. The department did not present evidence that these foster homes had either applied for or received financial assistance from the federal or state government.

{¶ 3} In December 2006, the Enquirer filed this action for a writ of mandamus to compel Riley, in her capacity as director of ODJFS, to provide the requested foster-home record. Respondent, Helen Jones–Kelley, succeeded Riley as the director of ODJFS, filed an answer, and is automatically substituted as the respondent in this case. S.Ct.Prac.R. X(2) and Civ.R. 25(D)(1). After the parties attempted mediation, we granted the Enquirer's application to dismiss Count Two of its complaint, a separate, unrelated public-records claim, and we granted an alternative writ on the remaining count. The parties submitted evidence and briefs, and the Public Children Services Association of Ohio, County Commissioners' Association of Ohio, Ohio Association of Child Caring Agencies, and Ohio Family Care Association submitted amicus curiae briefs in support of the director. The parties presented oral argument on January 8, 2008.

{¶ 4} This cause is now before us for our consideration.

## Mandamus

{¶ 5} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C). In determining a public-records mandamus claim, "R.C. 149.43 is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 376, 662 N.E.2d 334.

{¶ 6} For purposes of R.C. 149.43, ODJFS is a public office and its director is a public official. See R.C. 149.011(A), defining "public office" to include "any state agency"; R.C. 149.011(B), defining "state agency" to include "every department * * * established by the * * * laws of this state for the exercise of any function of state government"; R.C. 149.011(D), defining "public official" to include "all

officers, employees, or duly authorized representatives or agents of a public office."

{¶ 7} The director of ODJFS is the custodian of the department's records. The requested electronic copy of the database containing the names and addresses of foster caregivers in the state is a record under the Public Records Act because maintaining a record of names and addresses of foster caregivers is part of the department's duty in certifying foster caregivers. R.C. 149.011(G) (" 'Records' includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office").

{¶ 8} Therefore, in the absence of any exception to disclosure under the Public Records Act, the Enquirer is entitled to a copy of the requested names and addresses of certified foster caregivers in the state.

### Exceptions to Disclosure: Construction and Burden of Proof

{¶ 9} The director asserts that the requested electronic copy of the names and addresses of all foster caregivers certified by the state is excepted from disclosure by (1) federal and state law because foster caregivers are recipients of payments from a government program, (2) state law concerning data entered into the uniform, statewide, automated child-welfare-information system ("SACWIS"), and (3) a "good sense" rule consistent with public-records precedent.

{¶ 10} Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. *State ex rel. Carr v. Akron,* 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 30; *State ex rel. Beacon Journal Publishing Co. v. Akron,* 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 23. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception. The director relies on R.C. 149.43(A)(1)(v), which excepts from disclosure "[r]ecords the release of which is prohibited by state or federal law."

### Exceptions to Disclosure: Foster–Care Maintenance Payments

{¶ 11} "The Congress has enacted several statutes aimed at improving child welfare services provided by the several States," including Title IV–E of the Social Security Act, Section 670 et seq., Title 42, U.S.Code, which makes federal funds available to state programs that provide " 'foster care and transitional independent living programs for children' and 'adoption assistance for children with special needs.' " *Nebraska Dept. of Health & Human Servs. v. Dept. of*

*Health & Human Servs.* (C.A.D.C.2006), 435 F.3d 326, 327, quoting Section 670, Title 42, U.S.Code.

{¶ 12} Under Section 671, Title 42, U.S.Code, a state is eligible for federal payments if it has an approved plan that, among other things, "provides for foster care maintenance payments in accordance with section 672 of this title" and "provides safeguards which restrict the use of or disclosure of information concerning individuals assisted under the State plan" to the specified purposes, including the administration of the plan. Sections 671(a)(1) and (8), Title 42, U.S.Code. "Foster-care maintenance payments" are "payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, and reasonable travel to the child's home for visitation." Section 675(4)(A), Title 42, U.S.Code. Federal regulations reiterate the requirement of confidentiality specified in the act. See Section 1355.21(a), Title 45, C.F.R. ("The State plans for titles IV–E and IV–B must provide for safeguards on the use and disclosure of information which meet the requirements contained in section 471(a)(8) of the Act"); Section 205.50(a)(1)(i), Title 45, C.F.R. ("use or disclosure of information concerning applicants and recipients" of "financial assistance" is limited to specified purposes); Section 205.50(a)(1)(iv), Title 45, C.F.R. ("Publication of lists or names of applicants and recipients will be prohibited").

{¶ 13} Ohio has implemented its plan by designating ODJFS as "the single state agency to administer federal payments for foster care and adoption assistance made pursuant to Title IV–E" and requiring counties to make payments "on behalf of each child eligible for foster care maintenance payments under Title IV–E * * * to cover the cost of providing * * * [t]he child's food, clothing, shelter, daily supervision, and school supplies." R.C. 5101.141(B) and (C)(1)(a); see also *Weaver v. Ohio Dept. of Job & Family Servs.*, 153 Ohio App.3d 331, 2003-Ohio-3827, 794 N.E.2d 92, ¶ 4–6.

{¶ 14} In compliance with Section 671(a)(8), Title 42, U.S.Code, R.C. 5101.27(A) generally provides that "no person or government entity shall solicit, disclose, receive, use, or knowingly permit, or participate in the use of any information regarding a public assistance recipient for any purpose not directly connected with the administration of a public assistance program." "Public assistance" includes "financial assistance, medical assistance, or social services provided under a program administered by the department of job and family services or a county agency pursuant to Chapter * * * 5101 * * * of the Revised Code." R.C. 5101.26(F).

{¶ 15} The director claims that because foster-care maintenance payments under these federal and state provisions are made to foster caregivers on behalf of the foster children, foster caregivers are "individuals assisted under the State

plan" pursuant to Section 671(a)(8), Title 42, U.S.Code, "applicants and recipients" of "financial assistance" under Section 205.50, Title 45, C.F.R., and "public assistance recipient[s]" under R.C. 5101.27(A) and that their names and addresses are thus excepted from disclosure under the Public Records Act.

{¶ 16} The Enquirer counters that because the ODJFS director admitted in her deposition that the foster-care maintenance payments pay foster caregivers for their services in caring for children and are not considered to be "public assistance," the court should reject the director's claimed exception. The Enquirer's contention, however, lacks merit because—as the director asserts—the interpretation of the pertinent federal and state provisions raises a legal question rather than an evidentiary issue to be determined by witness testimony. See, e.g., *Shimko v. Lobe*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 60; *Pinchot v. Charter One Bank, F.S.B.*, 99 Ohio St.3d 390, 2003-Ohio-4122, 792 N.E.2d 1105, ¶ 39.

{¶ 17} In construing the pertinent federal and state provisions, our paramount concern is the intent in enacting them. See, e.g., *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11. "Determining this intent requires us to read words and phrases in context and construe them in accordance with rules of grammar and common usage." Id. A "recipient" is "one that receives." Webster's Third New International Dictionary (1986) 1895. To "receive" means "to take possession or delivery of." Id. at 1894. "Assistance" means "the act or action of assisting: aid, help." Id. at 132.

{¶ 18} Foster-care maintenance payments, although made on behalf of an eligible child, are delivered to the possession of and thus are received by a foster caregiver or by a public or nonprofit, private, child-placement or child-care agency. Section 672(b), Title 42, U.S.Code ("Foster care maintenance payments may be made under this part only on behalf of a child described in subsection (a) of this section who is—(1) in the foster family home of an individual, whether the payments therefore are made to such individual or to a public or private child-placement or child-care agency"). Although the children are the ultimate beneficiaries, the foster caregivers become assisted individuals who are partially reimbursed for certain costs related to child care. See *Timmy S. v. Stumbo* (C.A.6, 1990), 916 F.2d 312, 315 ("The relevant benefits contemplated under the Act include foster care maintenance payments to licensed foster parents and training"); Harden, Foster Children in the Courts (1983) 142 ("Payments to foster families may represent needed money that makes possible better care, clothing, and entertainment for the children").

{¶ 19} This construction of the pertinent provisions is supported by precedent. In *Claudio v. Dowling* (1997), 89 N.Y.2d 567, 575, 656 N.Y.S.2d 599, 678 N.E.2d 1211, the Court of Appeals of New York—that state's highest court—held that

"[s]ince foster care [maintenance] payments always are made as reimbursements, the foster parent may logically be considered the recipient of 'payments to cover the cost of * * * food, clothing, shelter, daily supervision, school supplies * * *.'" (Emphasis omitted.) Id., quoting Section 675(4)(A), Title 42, U.S.Code. In fact, in holding that the foster caregivers had the requisite standing to request an administrative hearing to contest the amount of foster-care maintenance payments received, the New York Court of Appeals reasoned that foster caregivers are also "beneficiaries of [state] case plans." Id. at 574, 656 N.Y.S.2d 599, 678 N.E.2d 1211. If the foster caregivers are not reimbursed for these costs, they have, in effect, donated them.

{¶ 20} Similarly, even if foster caregivers are not considered at least partial beneficiaries of foster-care maintenance payments, they would still be recipients of these payments. See *In re Estate of Bundy* (1977), 81 Wis.2d 32, 36, 259 N.W.2d 701 ("a receiver is thought of in legal terms as one who takes possession of property for the benefit of others"), in which the Wisconsin Supreme Court held that a person could be the recipient of public-assistance payments even if the person received the payments in part for the benefit of another person.

{¶ 21} Therefore, based on the plain language of Section 671(a)(8), Title 42, U.S.Code, Section 205.50, Title 45, C.F.R., and R.C. 5101.27(A), certified foster caregivers could qualify as "individuals assisted under the State plan," "applicants and recipients" of "financial assistance," and "public assistance recipient[s]" for purposes of these confidentiality provisions. As amici curiae Ohio Association of Child Caring Agencies and Ohio Family Care Association note, "[w]hile the dependent child is the *beneficiary* of funds and services made available through Title IV–E, the foster care parent is the *recipient,* on behalf of the child in his or her case, of the assistance provided." (Emphasis sic.)

{¶ 22} Nevertheless, the director still bears the burden of establishing that these federal and state exceptions to disclosure are applicable to the requested record, which is a list of the names and addresses of certified foster caregivers in Ohio. In this regard, the director has not yet introduced evidence that all of the certified foster caregivers in the requested record had received or were receiving foster-care maintenance payments or had applied for them at the time of the Enquirer's request. Notably, under Section 672(a), Title 42, U.S.Code, these payments can be made only on behalf of *eligible* children. There is again no evidence in the record that all of the certified foster caregivers were caring for eligible children when the Enquirer made its request. At best, the director submitted evidence that about 80 percent of all foster homes had a placement in the year before a certain investigation occurred. There is no indication that the placements cited were of eligible children or that every certified foster caregiver

had applied for or received foster-care maintenance payments at the time of the records request.

{¶ 23} Therefore, the director has not yet met her burden to establish that the disclosure of the list of names and addresses of certified foster caregivers would necessarily disclose which, if any, of the certified foster caregivers are, in fact, public-assistance recipients or applicants. The mere fact that ODJFS has certified certain individuals as foster caregivers does not make these individuals "assisted" under the state plan for purposes of federal law or "public-assistance recipients" or "applicants" under state law.

{¶ 24} In other words, federal and state law except from disclosure information concerning individuals assisted under the state foster-care plan and public-assistance recipients, but absent evidence showing that a list of the names and addresses of certified foster caregivers discloses which, if any, of those caregivers is a public-assistance recipient, the list is not excepted from disclosure under federal and state law. Section 671(a)(8), Title 42, U.S.Code; Section 205.50, Title 45, C.F.R.; R.C. 5101.27(A).

{¶ 25} Based on the foregoing, the director's contention that federal and state law except the foster caregivers' names and addresses from disclosure because they are recipients of foster-care maintenance payments lacks merit.

{¶ 26} Now that we have interpreted the applicable law, the status of the requested records can be established. We believe that the proper course is to allow the director to establish which information fits into this exception to disclosure, which had been undefined before our analysis. Forcing the director to make full disclosure of the names and addresses of all foster caregivers may jeopardize Ohio's eligibility to receive federal funding for the state's foster-care program and irrevocably destroy the privacy of foster caregivers whose identities are required under federal and state law to remain confidential.

### Exception to Disclosure: R.C. 5101.131

{¶ 27} Under Section 674(a)(3)(C), Title 42, U.S.Code, each state that has an approved plan is entitled to partial reimbursement of expenses for the creation of certain statewide, mechanized, data-collection and information-retrieval systems. The General Assembly enacted R.C. 5101.13, which requires ODJFS to establish and maintain SACWIS and to finalize statewide implementation of it not later than January 1, 2008. R.C. 5101.13(A) and (B).

{¶ 28} R.C. 5101.13(A) provides that the system shall contain the following records:

{¶ 29} "(1) Investigations of children and families, and children's care in out-of-home care, in accordance with sections 2151.421 and 5153.16 of the Revised Code;

{¶ 30} "(2) Care and treatment provided to children and families;

{¶ 31} "(3) Any other information related to children and families that state or federal law, regulation, or rule requires the department or a public children services agency to maintain."

{¶ 32} In general, "information contained in or obtained from the information system established and maintained under section 5101.13 of the Revised Code is confidential and is not subject to disclosure pursuant to section 149.43 or 1347.08 of the Revised Code." R.C. 5101.131.

{¶ 33} The director contends that all of the names and addresses of foster caregivers are excepted from disclosure based on R.C. 5101.131 because they are being entered into SACWIS as records relating to the "[c]are and treatment provided to children and families" under R.C. 5101.13(A)(2). But the director has not yet introduced sufficient evidence on the possible applicability of this exception. The evidence regarding SACWIS is limited to a brief reference in the director's deposition in which she noted that the system would allow the state to have information "about all the children in care, [and] all of the systems that are operating with those children and families." In her merit brief, the director conceded that "some names and addresses are not yet protected under R.C. 5101.13[1]" because they have not been entered into the system. In fact, the director submitted no evidence on how many, if any, foster caregivers' names and addresses were contained in SACWIS at the time of the Enquirer's request.

{¶ 34} Again, we believe that the proper course is to allow the director to establish which information fits into this exception to disclosure.

## Exception to Disclosure: "Good Sense" Rule

{¶ 35} Finally, the director and some of the amici claim that the names and addresses of foster caregivers should be held confidential under the "good sense" rule mentioned in State ex rel. Keller v. Cox (1999), 85 Ohio St.3d 279, 282, 707 N.E.2d 931, and State ex rel. McCleary v. Roberts (2000), 88 Ohio St.3d 365, 370, 725 N.E.2d 1144.

{¶ 36} In Keller, 85 Ohio St.3d at 282, 707 N.E.2d 931, we held that the constitutional right of privacy prevented an attorney representing a criminal defendant from obtaining access to a police officer's personnel files because "[p]olice officers' files that contain the names of officers' children, spouses, parents, home addresses, telephone numbers, beneficiaries, medical information, and the like should not be available to a defendant who might use the information to achieve nefarious ends." We further observed that "[t]his information should be protected not only by the constitutional right of privacy, but, also, we are persuaded that there must be a 'good sense' rule when such information about a law enforcement officer is sought by a defendant in a criminal case." Id.

{¶ 37} In *McCleary*, 88 Ohio St.3d 365, 725 N.E.2d 1144, syllabus, we held that "[p]ersonal information of private citizens, obtained by a 'public office,' reduced to writing and placed in record form and used by the public office in implementing some lawful regulatory policy, is not a 'public record' as contemplated by R.C. 149.43." In that case, the relator sought a copy of a city's database containing information about children who used the city's recreational facilities. We found that the personal information requested did not constitute a record for purposes of R.C. 149.43 because it did not document any of the functions of the city's recreation and parks department. Id. at 368–370, 725 N.E.2d 1144.

{¶ 38} We also noted in dicta that even if the requested information constituted a record subject to R.C. 149.43, the record would be excepted from disclosure because of the constitutional right of privacy in that "release of personal information of this nature creates an unacceptable risk that a child could be victimized." Id. at 370–372, 725 N.E.2d 1144.

{¶ 39} For the following reasons, neither *Keller* nor *McCleary* supports the application of a "good sense" exception to disclosure under the Public Records Act in this case.

{¶ 40} First, our decision in *Keller* was premised upon the constitutional right of privacy, and the director does not claim that the requested record here is protected by this right. See *Conley v. Corr. Reception Ctr.* (2001), 141 Ohio App.3d 412, 417, 751 N.E.2d 528 ("As we read *Keller*, the Supreme Court based its decision to deny access to the personnel records on the officers' constitutional right to privacy and their right to personal security and to bodily integrity").

{¶ 41} Second, "to the extent that *Keller* also suggests a good-sense rule regarding the release of public records, the rule appears to be inextricably intertwined with the facts of *Keller*, which involved requests by criminal defendants for personal information about law enforcement personnel." *State ex rel. Beacon Journal Publishing Co. v. Bodiker* (1999), 134 Ohio App.3d 415, 430, 731 N.E.2d 245.

{¶ 42} Third, our holding in *McCleary* relied on the fact that the requested database did not constitute a record for purposes of the Public Records Act. By contrast, the requested copy here is a record. Moreover, our dicta in *McCleary* relied on the constitutional right of privacy, which the director does not assert in this case.

{¶ 43} Fourth, like the lead-citation notices at issue in *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, 844 N.E.2d 1181, and unlike the city database at issue in *McCleary*, the requested information in this case does not include specific identifiable information about children. See *Daniels* at ¶ 17.

{¶ 44} Finally, "the General Assembly is the ultimate arbiter of policy consider- ations relevant to public-records laws * * * and it is for the legislature to 'weigh[ ] and balance[ ] the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure.'" *Kish v. Akron,* 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 44, quoting *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 172, 637 N.E.2d 911. A judicially created "good sense" rule cannot override this precedent. See, e.g., *State ex rel. WBNS TV, Inc. v. Dues,* 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 36–37.

{¶ 45} In sum, a judicially created "good sense" rule does not except a public record from disclosure under R.C. 149.43.

## Conclusion—Mandamus Claim

{¶ 46} Based on the foregoing, the director is ordered to divulge the database containing the names and addresses not otherwise excluded by application of the law as explained in this opinion.

## Attorney Fees

{¶ 47} The Enquirer also requests an award of attorney fees. An award under the applicable version of R.C. 149.43 is not mandatory.[1] *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph two of the syllabus. "In granting or denying attorney fees under R.C. 149.43(C), courts consider the reasonableness of the government's failure to comply with the public records request and the degree to which the public will benefit from release of the records in question." *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 54, 689 N.E.2d 25.

{¶ 48} The director's position was reasonable because of the possible applicabil- ity of the claimed federal and state exceptions to the requested database of names and addresses. We have not previously considered these claimed excep- tions. " '[C]ourts should not be in the practice of punishing parties for taking a rational stance on an unsettled legal issue.'" *Daniels,* 108 Ohio St.3d 518, 2006- Ohio-1215, 844 N.E.2d 1181, at ¶ 32, quoting *State ex rel. Olander v. French* (1997), 79 Ohio St.3d 176, 179, 680 N.E.2d 962.

---

1. Effective September 29, 2007, R.C. 149.43 was amended and subsection (C) provides new standards for awarding attorney fees in public-records mandamus cases. 2006 H.B. No. 9. That amendment does not include language that makes it applicable to records requests and cases filed before the effective date. Cf. *State ex rel. Beacon Journal Publishing Co. v. Ohio Dept. of Health* (1990), 51 Ohio St.3d 1, 2–3, 553 N.E.2d 1345.

{¶ 49} Moreover, the director introduced evidence of four instances in which biological parents located children who had been removed from their homes and proceeded to harm or threaten to harm the children and their caregivers. The state official in charge of overseeing foster-care and adoption programs for ODJFS has opined that the release of the names and addresses of foster caregivers would harm children, discourage adoption, and make it difficult to recruit and retain foster caregivers. Four separate groups have filed amicus curiae briefs in support of the director. In February 2008, the governor signed into law Am.Sub.H.B. No. 214, effective May 14, which exempts identifying information of current and prospective foster caregivers, including records of the type sought here.[2] This evidence thus establishes that the public benefit of disclosing this information is at best questionable.

{¶ 50} Based on the foregoing, we deny the Enquirer's request for attorney fees.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

O'CONNOR, J., concurs in judgment only.

---

Graydon, Head & Ritchey, L.L.P., John C. Greiner, and Jeffrey B. Allison, for relator.

Marc Dann, Attorney General, William P. Marshall, Solicitor General, Elise Porter, Deputy Solicitor, Henry G. Appel, Assistant Solicitor, and Jeffrey W. Clark, Senior Assistant Attorney General, for respondent.

Randall B. Muth, urging denial of the writ for amici curiae Public Children Services Association of Ohio and County Commissioners' Association of Ohio.

---

2. The parties submitted supplemental briefs addressing what impact, if any, Am.Sub.H.B. No. 214, which generally exempts this type of record, has on this case. We find that the act does not apply retroactively to this case, because the General Assembly has not so specified. *State v. LaSalle,* 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, ¶ 14; R.C. 1.48. Nor is there any indication that the General Assembly was merely clarifying existing law. In fact, the Legislative Service Commission concluded in its analysis of the amendment that "existing statutory law *does not* specifically *exclude foster caregiver information* from being considered a public record." (Emphasis added.) LSC Bill Analysis of Am.Sub.H.B. No. 214, at 7. http://lsc.state.oh.us/analyses127h0214-rs-127.pdf. The General Assembly thus *modified* rather than *clarified* existing law. Finally, it does not make "good sense" for courts to judicially legislate exceptions to the Public Records Act that have not been retroactively applied to pending claims by the General Assembly. See *WBNS TV,* 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 36–37. Thus, the enactment of Am.Sub.H.B. No. 214 does not alter our conclusion that the Enquirer is entitled to the requested extraordinary writ of mandamus.

Porter, Wright, Morris & Arthur, L.L.P., and Kathleen M. Trafford, urging denial of the writ for amici curiae Ohio Association of Child Caring Agencies and Ohio Family Care Association.